# CHARLESTON.

ADELAIDE E. STIFEL AND ARTHUR C. STIFEL v. GEORGE W.
HANNAN AND THE CITY OF WHEELING

Submitted April 24, 1923.    Decided January 22, 1924.

1. MUNICIPAL CORPORATIONS—*Municipality May Not Surrender
   Control of Construction And Use of Sewers.*

   A municipal corporation, under its police power, in the in-
   terest of public health, convenience and welfare, possesses
   the authority and power to control and regulate the construc-
   tion, maintenance and use of sewers within its limits, which
   it cannot surrender to others.  (p. 631).

2. EMINENT DOMAIN—*Municipality Cannot be Enjoined' From
   Using Private Connecting Sewer on Payment of Reasonable
   Compensation.*

   Where a sewer, laid by a private owner in a public high-
   way, connects with another sewer serving a suburban com-
   munity near a municipality, and the city limits are thereafter
   extended to include both sewers, the suburb and other con-
   tiguous territory, that part of the highway under which the
   sewer is laid becoming a part of the city's system of streets;
   and it is found necessary in the interest of public health,
   convenience and welfare for the city and its inhabitants to
   use such privately constructed sewer; neither the city nor
   its inhabitants will be enjoined from such use where the city
   offers to pay to the owners a reasonable compensation for
   the public ownership of the sewer.  (p. 631).

Appeal from Circuit Court, Ohio County.

Suit by Adelaide E. Stifel and another against George
W. Hannan and another.  From a decree for plaintiff, de-
fendants appeal.

*Reversed and remanded.*

*Carl O. Schmidt, Tom B. Foulk,* and *J. M. Ritz,* for ap-
pellants.
*Hubbard & Hubbard,* for appellees.

LITZ, JUDGE:

The defendants appeal from a decree entered August 5th,
1922, by the circuit court of Ohio county perpetually en-

joining the defendant, George W. Hannan, and his agents from tapping or using a sewer line extending along and under a portion of that part of the National Road within the city of Wheeling.

The National Road, entering West Virginia from the State of Ohio, runs southeastwardly through the county of Ohio, West Virginia, and continuing eastwardly passes through Pennsylvania to the city of Washington, D. C. It was originally designed and constructed by the Federal Government and subsequently ceded to the respective States through which it passes.

Extending southwestwardly from this thoroughfare in the city of Wheeling is a private way known as Hubbard's Lane. About 800 feet southeastwardly from Hubbard's Lane and touching the National Road on its southerly border is situate a suburb designated Elmwood Addition, consisting of twenty-one lots, one street called Wright avenue, and five alley ways. On November 3d, 1904, T. J. Hugus and Annie V. Hugus, who laid out the same, conveyed to S. Percy Norton and George W. Norton these lots, alley ways and street, together with the right to construct and maintain a sewer under the surface of adjoining lands owned by the grantors from the southerly end of Wright Avenue to Wheeling creek. The grantors, however, reserved for themselves, their heirs and assigns, the right to connect with and use such sewer and any sewers which may be afterwards constructed in Wright Avenue or any of the alleys of Elmwood Addition. Thereafter and prior to 1908 the Nortons constructed a twelve inch sewer from the National Road through the entire length of Wright Avenue and the lands of T. J. and Annie V. Hugus to Wheeling creek, and conveyed the lots to various persons. Houses have been constructed on these lots and Elmwood Addition is now a built-up residential community.

The plaintiffs, as successors in title to Ella B. Flaccus, own residence property adjoining the easterly side of Hubbard's Lane. While such owner, in the year 1908 she laid a sewer line from this property through Hubbard's Lane to the National Road, thence eastwardly along the southerly line of said road about 1000 feet to Wright Avenue, and there, by separate arrangements with T. J. Hugus and Annie V. Hugus,

and S. Percy Norton and George W. Norton, connected it with the twelve inch sewer through Wright Avenue to Wheeling creek. The sewer so constructed by Ella B. Flaccus is six inches in diameter in Hubbard's Lane, and eight inches in diameter along the National Road.

The defendant, Hannan, also possesses valuable residential property northeast of and adjoining the property of the plaintiffs, on which a costly residence was completed in 1920. This property also adjoins the easterly line of Hubbard's Lane and the southerly side of the National Road. The extension of the city limits of Wheeling, effected by act of the Legislature in 1919, includes Elmwood Addition, that part of the National Road under which is laid the sewer line in question, the properties of the plaintiffs and defendant, Hannan, the land between these properties and Elmwood, adjoining the southerly line of the National Road, and other lands in the vicinity. Wright Avenue and that portion of the National Road under which the sewer is laid have become and now constitute part of the system of streets in the City of Wheeling. In September, 1920, the defendant, Hannan, by permission from the city, connected his premises with this sewer line at a point on the National Road.

The bill in the case was filed against defendant George W. Hannan praying for a mandatory injunction requiring him to disconnect his sewer from the sewer laid by Ella B. Flaccus under and along the National Road from Hubbard's Lane to Wright Avenue, upon the allegation that such sewer had been constructed by her with the assent of persons owning premises adjoining the southerly side of the National Road between Hubbard's Lane and Wright Avenue, and the assent of the board of commissioners of Ohio county, the public body then having control of the National Road in that neighborhood. Hannan in his answer denies such assent on the part of this governing body. It is also asserted that the fee in the National Road is vested in the public.

The City of Wheeling, by leave, intervened in this cause as a party defendant and filed its answer containing like denial and showing by averments necessity for the public use and control of the sewer in controversy. Upon the bill, after

exceptions by plaintiffs to the material parts of the answers had been sustained, the circuit court awarded a permanent injunction enjoining the defendant Hannan and his agents from tapping or using said sewer. The court in its rulings proceeded upon the theory that the plaintiffs are entitled to maintain an absolute, exclusive use of the sewer, although it may have been constructed in the public highway without the permission or knowledge of any governmental agency, and notwithstanding it now occupies a street of the municipality and its public use is necessary for public health, convenience and welfare. With this view we cannot agree. A municipal corporation, under its police power, in the interest of public health, convenience and welfare, not only possesses the authority to control and regulate the construction, maintenance and use of sewers within its limits, but cannot surrender this power to others. McQuillin Municipal Corporations, Sec. 1444; *Weaver* v. *Cannon Sewer Company*, (Col.), 70 Pac. 953.

No actual injury to the plaintiffs is alleged. The bill says they were enabled to determine that Hannan was actually using the sewer only by depositing on his premises coloring chemicals which were afterwards discharged through it into Wheeling creek. It is claimed, however, that Annie V. Hugus, (T. J. Hugus being dead), has threatened to disconnect this sewer line from the twelve inch sewer through Wright Avenue to Wheeling creek, if defendant is permitted to maintain connection. This fear is either feigned or unfounded, as Annie V. Hugus is without sufficient interest in the twelve inch sewer to enforce such threat, at least without showing actual injury to her use of it.

The City of Wheeling in its answer expresses willingness, if required, to pay the plaintiffs a reasonable compensation for the public use and ownership of the sewer.

The plaintiffs concede that they would not be permitted to maintain the sewer for their exclusive benefit in such manner as to exclude, obstruct or hamper the city in making any proper or reasonable use of the street for the public benefit; and that whatever rights they have are in the nature of a license subject to and limited by the needs of the public. De-

priving the city of the use of the sewer in question would necessitate its construction of another sewer at the location occupied by the former, and in such construction, the city would not, even under plaintiffs' theory, be liable for damage in removing the present sewer. The laying of a second sewer on a different location would subject the surface of the highway or street, which is constructed of concrete base and brick pavement, to double liability necessitating the breaking thereof in repairing and maintaining two sewers instead of one; besides serious difficulty would be encountered, placing a new sewer even at the location of the present one, in restoring the hard surface of the highway or street to its previous condition. The sewer evidently was laid with the view of its use to properties abutting the southerly side of the National Road between Hubbard's Lane and Wright Avenue. This fact is attested by the increased size of the sewer from six inches in Hubbard's Land to eight inches in the National Road.

Upon consideration of the whole case we have concluded that the sewer in question should be a public sewer under the control of the city, but that the city in taking it over should pay to the plaintiffs a reasonable compensation therefor.

The injunction will therefore be dissolved on condition that the city consent to the court fixing in this proceeding a reasonable compensation which shall be paid by the city to the plaintiffs for the release of their individual claim of ownership in the sewer. If, however, the plaintiffs are unwilling to release to the city such claim of ownership in consideration of the reasonable compensation therefor to be fixed by the court, then the injunction shall continue dissolved without condition.

We therefore reverse the judgment of the circuit court, dissolve the injunction and remand the cause.

*Reversed and remanded.*